UNITED STATES, Appellee

v.

WALTER L. WASHINGTON, JR., Private–2, U. S. Army, Appellant

2 USCMA 177, 7 CMR 53

No. 815

Decided February 11, 1953

LT. COL. Stewart H. Legendre, USA, LT. COL. Herman P. Goebel, Jr., USA, and 1ST LT. Bernard Landman, Jr., USA, for Appellant.

LT. COL. Thayer Chapman, USA, and 1ST LT. Richard L. Brown, USA, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Accused stands convicted of rape and sodomy, violations respectively of Articles 120 and 125, Uniform Code of Military Justice, 50 USC § 714 and 50 USC § 719. The convening authority approved the findings and sentence and a board of review has affirmed. On petition of accused, this Court granted further review on the sole issue of whether the evidence is sufficient as, a matter of law to sustain the conviction.

As we read the record and understand the contentions of counsel, the crux of the factual issue here is whether the prosecutrix, Kim Yong Ja, was forced to commit the acts in question, or whether she consented thereto for pecuniary gain. There is no question that accused, Washington, and his companion, one Johnson, were with prosecutrix at the time the events underlying the present prosecution transpired.

Appellate defense counsel have attacked the credibility of prosecutrix. She testified that she shouted for help and actively resisted her attackers. In this she was corroborated by a Korean woman friend—but a soldier, with the latter at the time, testified that he heard no outcries. Two witnesses for the defense testified that they had previously had sexual intercourse with the prosecutrix, and that they had paid her therefor. She denied this. A soldier, who appears to have been on sentry duty on the night in question, heard shots, and, on investigating their source, found the accused and his companion in the company of prosecutrix. He testified that the girl was fully dressed when he joined the group, whereas she related that she reclothed herself subsequent to his appearance on the scene. He also stated that the girl made no complaint when asked by him if "anything was wrong." In connection with the latter account, it should be noted that prosecutrix made her first complaint of the offense only when interrogated the following morning by an officer investigating the gunfire disturbance of the preceding night.

Credibility of witnesses is, of course, not a proper matter for this Court's determination, but rather is within the province of the triers of fact. United States v. Slozes (No. 12) 1 CMR 47, decided November 20, 1951; United States v. Creamer (No. 179) 3 CMR 151, decided April 3, 1952; United States v. Strong (No. 244) 5 CMR 55, decided August 27, 1952; United States v. Stewart (No. 508), 5 CMR 76, decided August 29, 1952. A case might conceivably exist in which a key witness, and his or her testimony, could not—as a matter of law—serve as a vehicle for conviction, but this is not the situation here. The record reflects no contradiction whatever of the testimony of prosecutrix and her woman friend that the former was forcibly carried up the hill by accused and his companion. It is undisputed that the acts of intercourse and sodomy took place on an open hillside some 100 yards from the house in which prosecutrix rented a room. Likewise, there is no question that shots were fired by accused and his cohort—for it was the

presence of rifle-fire which stirred the curiosity of the investigating sentinel. These matters are diametrically opposed to consent by prosecutrix. If she was at that time engaged in prostitution, why was not the convenience of her nearby apartment resorted to? Why was it necessary to convey her up the hill by force? Why the gunshots?

Even though prosecutrix may have been a prostitute, it is, of course, conceivable that she would not ■■ grant consent on all occasions and on any terms— and quite possible that she might wish to deny her services to some who might demand them. The fact that two witnesses stated positively ■■ that they had paid for her physical favors does not at all deprive her testimony of evidential worth. Nor can we, under the circumstances of this case, re-■■ quire that predominant significance be accorded her failure to complain to the investigating sentinel who came upon the scene. She testified that she said nothing at that time because she did not know the guard, and was afraid that he was a friend of her attackers and would be of no assistance to her. This constituted a not unreasonable explanation.

Paragraph 153a, Manual for Courts-Martial, United States, 1951, states that: "[A] conviction cannot be based upon the uncorroborated testimony of an alleged victim in a trial for a sexual offense . . . if such testimony is self-contradictory, uncertain, or improbable." However, this paragraph can have no application here—for the testimony of this prosecutrix was neither self-contradictory, uncertain, nor improbable. Neither, we may observe, was her testimony without corroboration. Viewing this case for what it is —essentially a problem in credibility beyond the scope of review here—no conclusion is possible save that the conviction is supported by sufficient evidence.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.